# Constitutionality of the McGovern-Hatfield Amendment

Although it is difficult to resolve with confidence the substantial arguments that can be made for and against a proposed amendment seeking to employ Congress's power of the purse to end hostilities in Vietnam, the Administration should oppose the amendment as a matter of policy, if not as one of constitutional law.

June 2, 1970

MEMORANDUM OPINION FOR A MEMBER OF THE STAFF
NATIONAL SECURITY COUNCIL

By memorandum of May 27 you requested the views of the Department of Justice on the McGovern-Hatfield Amendment.[*] The Amendment consists of several separate sections, but the principal one is subsection (a), to which I will devote primary attention.

## I. Subsection (a)

This subsection provides that after December 31, 1970, any funds appropriated for use in Vietnam may be expended only

> as required for the safe and systematic withdrawal of all United States military personnel, the termination of United States military operations, the provision of assistance to South Vietnam in amounts and for purposes specifically authorized by the Congress, the exchange of prisoners, and the arrangement of asylum for Vietnamese who might be physically endangered by the withdrawal of United States forces.

The subsection further provides

> that the withdrawal of all United States military personnel from Vietnam shall be completed no later than June 30, 1971, unless the Congress, by joint resolution, approves a finding by the President that an additional stated period of time is required to insure the safety of such personnel during the withdrawal process.

---

[*] Editor's Note: The McGovern-Hatfield Amendment was offered as an amendment (No. 605) to H.R. 11,723, 91st Cong., a military procurement authorization bill. 116 Cong. Rec. 13,547 (Apr. 30, 1970). The amendment underwent multiple revisions during the course of consideration of H.R. 11,723. The version addressed in this memorandum opinion appears to have been Amendment 609, submitted and referred to the Senate Committee on Armed Services on May 5, 1970. 116 Cong. Rec. 14,111. Another version (Amendment No. 862) was ultimately rejected on the floor of the Senate by a roll-call vote of 55–39. 116 Cong. Rec. 30,683 (Sept. 1, 1970).

Congress by this subsection is attempting to employ its power of the purse to end hostilities in Vietnam, on presumably whatever terms can be negotiated, if any can, before the deadline set in the Amendment for final withdrawal of American troops.

The constitutional question raised by this proposed amendment is both fundamental and novel: Does Congress have, in addition to the power to declare war, the power to terminate hostilities and in effect "make peace" on its initiative rather than that of the President? Fundamental as the constitutional question is, it is one that has neither been authoritatively resolved nor indeed fully discussed or debated up until this time. Within the time limits specified in your memorandum, I can do no more than sketch the arguments on both sides, which suggest that an answer either way on the question is not free from difficulty.

On the one hand, supporters of the constitutionality of the McGovern-Hatfield Amendment point to the fact that Congress alone is given power to appropriate money, and that therefore Congress may attach to its appropriations such conditions as it sees fit. They also point to the fact that the war power is shared between the President and Congress, with Congress alone having the power to declare war. They conclude that the existence of these two powers is sufficient to validate, as a matter of constitutional law, the principal provision of the Hatfield-McGovern Amendment.

Opponents point to the fact that all of the wars in our history have been concluded by some form of executive initiative—a surrender in the field, an armistice, or a treaty of peace, negotiated by the President and submitted to the Senate for ratification in accordance with the constitutional provisions governing treaties. In this connection, they note that in the debates in the Constitutional Convention, on the same day as Congress was granted the power "to declare war," Pierce Butler of South Carolina moved "to give the Legislature power of peace, as they were to have that of war." 2 *The Records of the Federal Convention of 1787* 319 (Max Farrand ed., 1966). This motion was defeated by vote of the delegates, ten states to none. *Id.* Oliver Ellsworth of Connecticut, during the debate, made the comment that "War also is a simple and overt declaration. [P]eace attended with intricate & secret negociations." *Id.*

Opponents of the constitutionality of the measure also contend that while Congress may unquestionably refuse to make any appropriation at all for the support of the armed forces, it may not condition the appropriations it does make in such a manner as to violate some other provision of the Constitution. *Lovett v. United States*, 328 U.S. 303 (1946).[1]

---

[1] "It would hardly be maintained that Congress could end a foreign war by declaring peace in the midst of a campaign while the war is being actively waged on both sides." John M. Mathews, *The Termination of War*, 19 Mich. L. Rev. 819, 828 (1921).

A satisfactory resolution of these constitutional arguments cannot be made in the time available, and very likely could not be made with any confidence even were a good deal more time available. Questions of the distribution of power in the field of external affairs are not traditionally justiciable, and their settlement is frequently accomplished in the political arena, rather than in the judicial forum.

I venture to point out, however, that the same arguments which suggest that this measure may have constitutional difficulties likewise suggest that the Administration ought to oppose it as a matter of policy, if not as one of constitutional law. The chances for any sort of "peace with honor" which the President has indicated to be his goal must depend both on secret negotiations, and upon reasonably flexible availability of military force as a method to compel concessions by the enemy. The adoption of a fixed calendar date for withdrawal of our forces from the field may well be a prescription for peace, but it is virtually certain that it will be a prescription for peace on the enemy's terms. The framers of the Constitution were men of affairs, and the debates make it rather clear that they saw the ultimate fallacy of congressional initiative as a means for ending the war—it requires the exposure of our country's "hole card" without the enemy having to expose his.

Only if the Administration is prepared to say at this moment that the policy of Vietnamization is sufficiently advanced so that American troops may begin in the near future an inflexible schedule of withdrawal could this Amendment be said to do anything other than guarantee the failure of the Vietnamization program. If the other nations involved know in advance that the President, Cinderella-like, will turn into a pumpkin on a date fixed by Congress, his proposals cannot be expected to receive serious attention at the negotiating table.

Since the constitutional and policy issues involved in this section of the Amendment seem to me to be inextricably intertwined, it is not possible to state that the Department's recommendation is based wholly on constitutional grounds. Having said that, I recommend that the Administration oppose this subsection of the Hatfield-McGovern Amendment in Congress, and that the President veto the Amendment if it be adopted by both houses of Congress. To do less means, I think, surrender of presidential initiative to Congress in a manner that cannot but have the most serious adverse consequences to our efforts in Southeast Asia.

## II. Subsection (b)

This subsection would expand the prohibition adopted last year against military operations in Laos. Since the President agreed to the earlier provision, since Laos is neither a theater in which American troops are presently engaged in combat nor a staging area for enemy attack, and since his constitutional power to repel attack and protect the safety of United States troops in the field is not affected by such a provision, it appears relatively unobjectionable.

### III. Subsection (c)

This subsection is a rough equivalent of the Cooper-Church Amendment,[*] which the Department has previously advised you is, in its opinion, of very doubtful constitutionality, and should be opposed for that reason.

WILLIAM H. REHNQUIST
*Assistant Attorney General*
*Office of Legal Counsel*

---

[*] Editor's Note: The Cooper-Church Amendment prohibited the use of funds to put ground combat troops or U.S. advisers in Cambodia. It was introduced as an amendment to H.R. 19,911, 91st Cong., and ultimately became law as section 7 of the Special Foreign Assistance Act of 1971, Pub. L. No. 91-652, 84 Stat. 1942, 1943.